```
                 UNITED STATES DISTRICT COURT
                   DISTRICT OF CONNECTICUT

OPEN SOLUTIONS INC.,           :

     Plaintiff,                :

V.                             :     Case No. 3:12-CV-1353 (RNC)

GRANITE CREDIT UNION,          :

     Defendant.                :
```

RULING AND ORDER

Plaintiff Open Solutions Inc. ("OSI") brings this diversity action against defendant Granite Credit Union ("Granite") seeking to recover damages for breach of contract.  Granite now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) on the ground that the Court lacks personal jurisdiction over Granite.  In the alternative, Granite moves pursuant to 28 U.S.C. § 1404(a) for a discretionary transfer of the action to the District of Utah.  For the reasons stated below, the motion to dismiss is denied, and the motion to transfer is granted.

I.   Background

Beginning in the 1980s, Granite, a Utah Corporation, contracted with SOSystems, a Utah-based company, to provide Granite with computer software, hardware maintenance, and

technical support.  See Azevedo Decl. (ECF No. 39-2) ¶ 7. In 2005, SOSystems was acquired by OSI, a Delaware corporation with its principal place of business in Connecticut.  See Burgener Aff. (ECF No. 40-3) ¶ 4.  OSI and Granite entered into a new licensing and services agreement (the "Agreement"), which related to the implementation of a core processing system[1] known as the "SME System."  See id. ¶ 8.  Granite contracted to be a test site for a new version of SME System software, known as "2006.2."  See id. ¶ 11.

In January 2011, after several years of implementing the Agreement, Granite notified OSI that it would not proceed with the conversion.  See id. ¶¶ 15, 17.  According to Granite, testing had revealed that the system could not adequately perform regular, day-to-day business activities with 2006.2.  See Azevedo Decl. ¶¶ 23, 26.  Granite then refused to pay amounts allegedly due under the Agreement and deconverted from the SME System altogether.  See Compl. ¶ 35.  Granite chose CMC Flex, a Utah-based company, to provide new software for Granite and to assist with the deconversion from the SME System.  See Azevedo Decl. ¶ 29.

---

[1] A core processing system is the software and hardware used by a credit union to process financial transactions, such as ATM transactions, loan applications, and account transactions.  Burgener Aff. ¶ 9.

In September 2012, OSI filed this suit, alleging that Granite had breached the Agreement.

II. Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam).  Prior to conducting discovery, a plaintiff may defeat a motion to dismiss "by pleading in good faith legally sufficient allegations of jurisdiction."  Ball v. Matallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990) (internal citation omitted).  "[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor . . . ."  A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993).  To determine whether personal jurisdiction exists in a diversity case, federal courts apply the long-arm statute of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment.  Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996).

Plaintiff contends that the defendant is subject to suit under Connecticut General Statutes § 33-929(f)(1), which allows for jurisdiction over every foreign corporation on any cause of action arising "[o]ut of any contract made in this state."  In Connecticut, "a contract is considered made when and where the last thing is done which is necessary to create an effective agreement." BCH Am., Inc. v. DEKO Int'l Co., No. FST-CV-064008327S, 2007 WL 448868, at *5 (Conn. Super. Ct. Jan. 26, 2007) (quoting Elec. Regulator Corp. v. Sterling Extruder Corp., 280 F. Supp. 550, 555 (D. Conn. 1968)).  In Alfred M. Best Co. v. Goldstein, 124 Conn. 597 (1938), the Connecticut Supreme Court held that a contract is made in the location where the final signature is placed on the contract because it is the acceptance of an offer made.  Id. at 602; see also Res. Sys. Group, Inc. v. Internetcash Corp., CV000181480, 2001 WL 752720, at *3 (Conn. Super. Ct. June 12, 2001) ("The parties do not dispute that the final act of signing was done by the plaintiff in Connecticut.  Consequently, the agreement between the parties was a 'contract made in this state,' within the meaning of General Statutes § 33-929(f)(1).").  Plaintiff urges that the Agreement was made in Connecticut

4

as the final act of signing was done by OSI in Connecticut on November 30, 2005.  See Compl. Ex. A (ECF No. 1-1) at 10.

Granite argues that the Agreement became enforceable when Granite signed it on November 29, 2005 in Utah, as evidenced by the November 29, 2005 effective date, and that OSI's signature the next day was a mere formality.  See id. at 1, 10.  "The question of whether a written contract must be signed to be binding is a question of the parties' intent . . . ."  17 C.J.S. Contracts § 85.  On the last page of the Agreement, it states, "ACCEPTED AND AGREED TO BY OPEN SOLUTIONS, INC.," above a blank space for OSI's signature.  See Compl. Ex. A at 10.  Had it been the intent of the parties to not require OSI's signature, this section likely would not have been included.  See, e.g., Leodori v. CIGNA Corp., 814 A.2d 1098, 1107 (N.J. 2003) ("Our contract law does not permit defendant to contemplate or require plaintiff's signature on an agreement and then successfully to assert that the omission of that signature is irrelevant to the agreement's validity.").  Accordingly, jurisdiction is  proper under Connecticut General Statute § 33-929(f)(1).[2]

---

[2] Because jurisdiction exists on the ground that the contract was made in Connecticut, it is unnecessary to decide

Turning to due process, Granite's contacts with OSI in Connecticut, viewed collectively, were substantial enough that it should reasonably have anticipated being sued here. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 476 (1985).  Granite knowingly contracted with OSI, a Connecticut-based corporation, and included in the Agreement a Connecticut choice-of-law provision.  See id. at 482 (stating that the defendant "purposefully availed himself of the benefits and protections of Florida's laws by entering into contracts expressly providing that those laws would govern franchise disputes").  Moreover, Granite communicated with OSI personnel in Connecticut and sent payment for invoices to Connecticut.

Because the minimum contacts requirement is satisfied, jurisdiction is proper unless exercising specific personal jurisdiction over the defendant on the basis of its contacts with Connecticut would be unfair.  See id. at 477-78 ("[M]inimum requirements inherent in concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities.").  Granite has not shown that

---

where the contract was "performed" as defined under Connecticut General Statute § 33-929(f)(1).

litigating in Connecticut would be so costly or inconvenient that for all practical purposes it would be deprived of a day in court.  Accordingly the defendant's motion to dismiss is denied.

III. <u>Motion For Transfer</u>

Under 28 U.S.C. § 1404(a), the Court has discretion to transfer the action to the District of Utah, where it could have been brought originally.  The relevant factors include the location of witnesses, the availability of process to compel witnesses to testify, the location of relevant documents, the locus of the operative facts, the relative means of the parties, the plaintiff's choice of forum, and the interests of justice, among others.  <u>A Slice of Pie Prods., LLC v. Wayans Bros. Entm't</u>, 392 F. Supp. 2d 297, 305 (D. Conn. 2005).  The moving party has the burden of establishing the propriety of transfer by a clear and convincing showing.  <u>Wilson v. DirectBuy, Inc.</u>, 821 F. Supp. 2d 510, 513 (D. Conn. 2011).

The "[c]onvenience of the witnesses is the most powerful factor governing the decision to transfer a case." <u>Adams v. Time Warner</u>, 83 F. Supp. 2d 296, 298 (D. Conn. 1999).  In addition to its own Utah-based employees, Granite

7

has identified five current OSI employees and three former OSI employees who live in Utah and are expected to be called as witnesses.  See Azevedo Decl. ¶¶ 13, 16, 28.  Granite also has identified other individuals in Utah who may be called as witnesses, such as a computer programmer who assisted with the transfer to CMC Flex.  See id. ¶ 29.[3]  On the other hand, OSI has identified only two Connecticut-based employees who are likely to be called as witnesses: the Director of SME Implementation, who helped create the implementation team, and an OSI officer who would testify about calculation of damages.  The only other witness OSI mentions is a client care manager, who currently lives in Utah.  See Pl.'s Supplemental Mem. Opp'n Mot. Dismiss (ECF No. 40) at 2-3.

Another primary factor is the locus of operative facts,

---

[3] Another key witness is Jeanette Azevedo, a former Granite officer currently living in Florida, who oversaw implementation of the SME System.  Ms. Azevedo states that due to financial constraints, she is able to travel to Utah, but not Connecticut. See Azevedo Decl. ¶ 30.  OSI responds that it is willing to travel to Florida to take Ms. Azevedo's deposition, and is prepared to use video of her deposition testimony at trial.  Yet "[t]he use of video depositions would . . . fail as an equivalent for live testimony, both because of the expense involved, and because counsel would be unable to sharpen their questioning at trial based on a considered review of the deposition, or alter the scope of questioning to reflect unanticipated trial developments." United Rentals, Inc. v. Pruett, 296 F. Supp. 2d 220, 229 (D. Conn. 2003).

which, in a breach of contract case, considers "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." Reinhard v. Dow Chemical Co., No. 07Cv3641(RPP), 2007 WL 2324351, at *6 (S.D.N.Y. Aug. 13, 2007).  The Agreement arose out of discussions between Granite and SOSystems, which had a longstanding relationship with Granite until SOSystems was acquired by OSI.  See Azevedo Decl. ¶¶ 12, 13.  The Agreement was negotiated with former SOSystems employees operating out of SOSytems' office in Orem, Utah.  See id. Pursuant to the Agreement, Granite ordered IBM servers, which were initially shipped to OSI in Orem and then relocated to Granite's office in Utah.  See id. ¶ 18.  All software was loaded directly onto the servers in Utah, and all code was written by programmers located in Utah and run on the servers located in Utah.  See id.  Granite's decision to terminate the Agreement on the basis of complications it claims to have encountered implementing 2006.2, and its use of third parties, such as CMC Flex, to deconvert from the SME system, occurred in Utah.  The Connecticut contacts to which OSI points – Granite's notice of termination letter sent to OSI in Connecticut, the injury to OSI resulting from

the alleged breaches, and email communications sent via OSI's Connecticut servers -- do not undercut Granite's showing that the locus of operative facts is Utah.

Another important consideration is the availability of process to compel attendance of witnesses at trial. Under Rule 45, a nonparty witness may not be compelled to attend a trial if the witness is located out of state and would have to travel more than 100 miles. See Fed. R. Civ. P. 45(c)(3)(A)(ii). Granite lists four nonparty Utah witnesses--three former OSI employees and a computer programmer--who could not be compelled to testify at a trial in Connecticut. OSI responds that under Rule 45(c)(3)(C), the Court may compel the appearance of any witness under certain circumstances. However, this section of the Rule is designed to accommodate a trial witness who lives within the forum state, but farther than 100 miles from the courthouse. See, e.g., Todd v. LaMarque, C 03-3995 SBA, 2008 WL 564802, at *1-2 (N.D. Cal. Feb. 28, 2008); see also Charles Alan Wright & Arthur R. Miller, 9A Fed. Prac. & Proc. Civ. § 2461 (3d ed. 2008).

To offset the weight of the foregoing factors, which strongly favor transfer, OSI relies primarily on the weight

usually accorded a plaintiff's choice of forum.  See Iragorri v. United Techs. Corp., 274 F.3d 65, 70 (2d Cir. 2001).  A plaintiff's choice of forum receives less deference, however, when the locus of operative facts is elsewhere, as is the case here.  See Charter Oak Fire Ins. Co. v. Broan-Nutone, LLC, 294 F. Supp. 2d 218, 220 (D. Conn. 2003) (plaintiff's choice of forum has less weight "where the case's operative facts have little connection with the chosen forum") (internal quotation mark omitted).[4]

Balancing the pertinent factors, the Court concludes that it is necessary and appropriate to transfer the case to Utah, the locus of the operative facts, notwithstanding the plaintiff's preference for Connecticut as the forum, in order to serve the convenience of the witnesses, and to ensure that process will be available to compel the attendance of witnesses at trial.

---

[4] The parties disagree about whether documents relating to the claims in the complaint are located on servers in Connecticut or at Granite's place of business in Utah, but "given the ease of transmitting documents, this factor is relatively unimportant." Labonte v. TD Bank, N.A., 3:10-CV-1335 RNC, 2011 WL 3930296, at *4 (D. Conn. May 11, 2011).  And although the Agreement includes a Connecticut choice-of-law provision, the District of Utah would not have difficulty applying Connecticut contract law as "federal courts are accustomed in diversity actions to applying laws foreign to the law of their particular State."  Pitney Bowes, Inc. v. Nat'l Presort, Inc., 33 F. Supp. 2d 130, 132 (D. Conn. 1998).

IV. <u>Conclusion</u>

Accordingly, Granite's motion to dismiss is hereby denied, and Granite's [ECF No. 25] motion to transfer is granted. The Clerk is directed to transfer the action to the United States District Court for the District of Utah.

So ordered.

/s/ RNC
Robert N. Chatigny
United States District Judge
